# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY A. NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 16-896-GMS |
| | ) |
| CONNECTIONS CSP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The plaintiff, Anthony A. Nash ("Nash"), an inmate at the Howard R. Young Correctional Institution, Wilmington, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 3.) Nash appears *pro se* and has paid the filing fee. The operative fifth amended complaint is found at D.I. 83. Presently before the court are several motions filed by Nash. (D.I. 165, 169, 177, 217, 223.)

## I. DISCOVERY

The court entered a scheduling and discovery order on October 23, 2017, that provided for all discovery to be initiated so that it would be completed on or before January 22, 2018. (D.I. 143.) On January 1, 2018, Nash mailed a motion for leave to exceed the interrogatory limit to serve additional interrogatories upon the defendant C.O. Clark due to his limited discovery tools. (D.I. 165.) The motion is opposed. (D.I. 169.)

The discovery deadline has not been extended and the motion is untimely. Therefore, the motion will be denied. (D.I. 165.)

## II. MOTIONS TO COMPEL

Nash served discovery requests upon the defendants on June 20, 2017. (*See* D.I. 108, 109.) The record reflects that the State defendants provided Nash responsive documents on August 1, 2017 (D.I. 124, 125) and the medical defendants provided medical records to Nash in mid-August 2017 following the execution of a confidentiality agreement (D.I. 129, 133). On January 18, 2018, Nash filed a motion to compel for the defendants to fully respond to the discovery requests after he had contacted defense counsel in what he deemed an unsuccessful attempt to obtain all the discovery he sought. (*See* D.I. 144, 148, 169.) Nash argues that the defendants have waived their objections by their failure to timely respond to his requests and the discovery he seeks is relevant to his claims. (D.I. 169.) The defendants oppose the motion (D.I. 172, 188.)

After Nash filed the motion to compel, Connections responded to the discovery requests on January 22, 2018 (D.I. 173, 174) and the State defendants responded to the discovery requests on February 22, 2018 (D.I. 205, 206, 207, 208, 209).[1] Connections argues that Nash's requests demanded the production of voluminous information not proportional to his claim of deliberate indifference and negligence regarding his dental needs, and several requests asked for the disclosure of private health information of other inmates as well as information privileged under medical peer-review, but, nonetheless it provided responses and appropriate objections on January 22, 2018. (D.I. 188.)

Connections made many objections to the discovery requests, including that requested confidential health information of other inmates is protected from disclosure under federal law,

---

[1] Other than as will be discussed when ruling on Nash's amended motion to compel, it appears that the State defendants have adequately responded to Nash's discovery requests.

Delaware, and DOC policy. It also asserted the peer-review privilege. Connections acknowledges that it responded and objected to discovery beyond the required time-frame, but argues its untimeliness should be excused for good cause noting that Nash "requested a swath of information that includes sensitive private information of inmates and personnel" and it is not permitted to disclose this protected information under both federal and Delaware law. (*Id.* at 4.) Connections further argues that Delaware law, 24 Del. C. § 1768, protects peer-review material from dissemination in discovery. (*Id.*) Nash replies that Connections' objections should be deemed waived, that the peer-review privilege is not recognized, and asks that Connections be reasonable and redact documents by limiting them to Nash's dental service report and near-miss report and substitute inmates' names with "John Does." (D.I. 192.)

Upon review of Nash's discovery requests, the court finds that Connections has shown good cause for its failure to timely respond to the requests. And, for the most part, Connections objections are sustained, particularly those that relate to medical records and information protected by federal and Delaware law.

Connections has also asserted a peer-review privilege under Delaware law, 24 Del. C. § 1768. The statute provides, in part, as follows:

> the records and proceedings of committees and organizations described in subsection (a) of this section are confidential and may be used by those committees or organizations and the members thereof only in the exercise of the proper functions of the committee or organization. The records and proceedings are not public records and are not available for court subpoena, nor are they subject to discovery. A person in attendance at a meeting of any such committee or organization is not required to testify as to what transpired at the meeting. A person certified to practice medicine, or a hospital, organization, or institution furnishing, in good faith and without gross or wanton negligence, information, data, reports, or records to such a committee or organization or a member thereof with respect to any patient examined or treated by a person certified to practice medicine or examined, treated, or confined in the hospital or institution is not, by reason of furnishing such information, data, reports, or records, liable in damages to any person or subject to any other recourse, civil or criminal.

Assertions of privilege in federal court are governed by Federal Rule of Evidence 501, which states that "the common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: • the United States Constitution; • a federal statute; or • rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Here, Nash raises both federal and state law claims in the case. "[T]he federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). Therefore, "the mere fact that state law claims and federal law claims coexist in this action does not by itself justify application of [Delaware's] peer-review privilege." *Weiss ex rel. Estate of Weiss v. County of Chester*, 231 F.R.D. 202, 205 (E.D. Pa. 2005) ("federal privileges apply to federal law claims, and state privileges apply to claims arising under state law"). In *Weiss*, the court declined to extend the state statutory peer- review privilege into federal common law, finding that the Third Circuit disfavors privilege, and that the U.S. Congress has considered, but declined to extend, a similar peer-review privilege to federal courts. *Weiss*, 231 F.R.D. at 205. In its opposition, Connections made no reference to Third Circuit law. Instead, it relied upon authority from the Western District of Michigan. (D.I. 188 at 5.)

The peer-review privilege is not available in this case, and Connections cannot withhold discovery on this ground. *See e.g., Crawford v. Corizon Health, Inc.*, 2018 WL 1863022 (W.D. Pa. 2018). The objections are overruled. Therefore, the court will grant this portion of Nash's motion to compel. Connections shall respond to those discovery requests wherein it invoked the

peer-review privilege. The discovery includes Nash's request for production of documents Nos. 2, 6, 7, 8, 9, 10, 25, 26, 27, 28, 29, 31, 32, and 33.

Nash recently filed an amended motion to compel. (D.I. 223.) Therein, he seeks relevant insurance agreements, noting on the one hand that the defendants did not provide them as required under Fed. R. Civ. P. 26(a)(1)(A)(iv), while on the other hand, that proceedings brought by inmates are exempt from initial disclosures under Rule 26(a)(1)(B)(iv). Nash did not seek a copy of the insurance policy in his discovery requests and, as he acknowledges, this case is exempt from initial disclosures. Therefore, this portion of the amended motion to compel will be denied.

In the amended motion to compel, Nash seeks complete copies of the DDOC's security log book for the last week of October 2014, as sought in request for production of documents No. 16. The State defendants provided copies, but as Nash notes, the pages are "cut short" and are incomplete. Therefore, this portion of the amended motion to compel will be granted.

### III. MOTION FOR SANCTIONS

Nash seeks sanctions against the medical defendants for filing a motion to dismiss for insufficiency of process claiming it was filed for an improper purpose. (D.I. 177.) The medical defendants oppose on the grounds that their counsel's appropriate use of the Federal Rules of Civil Procedure cannot be considered an abusive litigation tactic that warrants the imposition of sanctions. (D.I. 191.) Nash has failed to set forth adequate grounds for the imposition of sanctions. Accordingly, the court will deny the motion. (D.I. 177.)

### IV. MOTION FOR INJUNCTIVE RELIEF

Nash seeks injunctive relief and asks the court to order his removal from the dormitory setting of the Key program and to restore his work status so that he can continue to earn good

time credits. (D.I. 217.) In the alternative, Nash asks that he be removed from state custody and placed in federal custody. He contends he has demonstrated success on the merits, and he will suffer irreparable harm if an immediate injunction does not issue. The defendants oppose the motion. (D.I. 227, 228.)

A preliminary injunction is "an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("NutraSweet II"). The elements also apply to temporary restraining orders. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. July 31, 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

In support of his motion, Nash provided copies of his medical records and copies of grievances he submitted. Two grievances, submitted in March 2016, sought medical treatment following an injury when Nash fell from the top bunk. (D.I. 217.) One grievance submitted in March 2018, requested a bottom bunk assignment after Noble fell from the top bunk. (*Id.*) Another grievance, submitted in February 2016, advised that Nash suffered from agoraphobia,

did not "do well" when he is classified to the Key program, and asked he not be housed in a dorm setting. (*Id.*) The grievance was resolved and a psychiatrist indicted that she would review a new classification option. (*Id.*) On February 23, 2018, Nash was classified to minimum security, approved for Key North, and removed from his institutional job. (*Id.*)

Nash states that he can sleep for no more than two hours at his current dormitory top bunk assignment due to his mental health condition. (D.I. 225.) He states there are approximately 91 inmates housed in the dormitory and it is a major issue for him. (*Id.*) Nash states he was told that, because he has been off medication since last July, he does not need it. (*Id.*) He contends he is being denied medication to help him cope with the dormitory setting. Nash states that if he refuses the classification program, he will forfeit the good time he has accumulated. (*Id.*)

In opposition to the motion, State defendant provides Nash's institutional file. (D.I. 227) The medical defendants join the State defendants' opposition. (D.I. 228.) Nash's sentencing order requires that he "participate in any recommended mental health and/or substance abuse treatment" and "[b]e evaluated for substance abuse and follow any recommendations for counseling, testing or treatment deemed appropriate." (D.I. 227, ex. C.) Nash was evaluated on March 8, 2018, by Dr. David August ("Dr. August") in connection with his refusal to attend the Key program. (*Id.* at ex. A.) Dr. August noted that Nash did not demonstrate any signs of mental illness, seemed to be malingering or faking psychosis, and Nash's secondary gain would be an attempt to avoid the Key program. (*Id.*) A March 23, 2018 report indicated that Nash would be seen by mental health on a monthly basis to assess his status. (*Id.*) A March 28, 2018 evaluation determined that Nash did not have any symptoms that would exclude him from the Key program. (*Id.*).

Nash's goal is to be removed from the Key program and have his work status restored. The evidence of record indicates that mental health professionals are aware of Nash's mental health status, he is seen regularly and, because medical professions have concluded that Nash is not currently suffering from mental illness, he does not have symptoms that would exclude him from the Key program. In light of the forgoing, the Court finds that Nash has neither demonstrated the likelihood of success on the merits, nor demonstrated irreparable harm to justify the issuance of immediate injunctive relief. Therefore, the motion will be denied. (D.I. 217.)

## V. CONCLUSION

For the above reasons, the court will: (1) deny Nash's motion for leave to exceed interrogatory limit (D.I. 165); (2) grant in part and deny in part Nash's motions to compel (D.I. 169, 223; (3) deny Nash's motion for sanctions (D.I. 177); and (4) deny Nash's motion for injunctive relief (D.I. 217).

An appropriate order will be entered.

UNITED STATES DISTRICT JUDGE

April 30, 2018
Wilmington, Delaware