IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY A. NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 16-896-GMS |
| | ) |
| CONNECTIONS CSP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

## I. INTRODUCTION

The plaintiff, Anthony A. Nash ("Nash"), an inmate at the Howard R. Young

Correctional Institution ("HRYCI"), Wilmington, Delaware, filed this lawsuit pursuant to 42

U.S.C. § 1983. (D.I. 3.) Nash appears *pro se*. The operative fifth amended complaint is

found at D.I. 83. Presently before the court are motions for summary judgment filed by the

parties. (D.I. 163, 189, 196, 243, 249, 263.)

## II. PROCEDURAL AND FACTUAL BACKGROUND

Nash raises claims regarding dental care provided him at HRYCI. (D.I. 83.) Nash was

booked into the HRYCI on May 4, 2014. (D.I. 250, Ex. B at 614.)[1] The defendant Marc

Richman, Ph.D. ("Dr. Richman"),[2] is the Bureau Chief of Correctional Healthcare Services for

---

[1] Exhibits A and B of D.I. 250 are paged as "DOC000." The court cites only to the page number (*e.g.*, D.I. 250, Ex. A at 1).

[2] Dr. Richman holds a Ph.D. in psychology. (D.I. 246.) Nash testified that he sued Dr. Richman because he submitted grievances, giving Dr. Richman knowledge of Nash's dental condition, his grievances were denied, and he has the "sole decision-making authority, not the

the Delaware Department of Correction ("DOC") and the defendant Elliott Clark ("Clark") is a correctional officer at HRYCI. (D.I. 245, D.I. 246.) The defendant Connections Community Support Programs, Inc. ("CCSP") became the medical care contractor for the DOC on July 1, 2014. (D.I. 246.) The defendant Mikelle Phillips, M.D. ("Dr. Phillips) is employed by CCSP as the medical director at HRYCI. (D.I. 250, Ex. F.) The defendant Mitchell A. White, P.A. ("White"), also employed by CCSP, is a physician assistant at HRYCI who provided care to Nash in response to sick calls and during regular chronic care appointments. (*Id.*) The defendant Christine Claudio ("Claudio") is CCSP's health services administrator, and she oversees the medical care operations at all DOC facilities. (*Id.* at Ex. G.) The defendant R.N. Tracey Crews ("Crews") is CCSP's health services administrator at HRYCI and, in that position, oversees the medical care operations at HRYCI. (*Id.* at Ex. H.) The defendant Karen Lewis ("Lewis) is CCSP's medical administrative assistant at HRYCI. (*Id.* at Ex. I.) She performs administrative tasks, but she does not provide medical or dental services. (*Id.*) The defendant Dr. Taurence Bishop ("Dr. Bishop"), a dentist, is a CCSP employee who provides dental care on an as needed basis. (*Id.* at Ex. C.) The defendant Jason Justison, D.M.D. ("Dr. Justison"), provided dental treatment to Nash. (D.I. 196 at 3.) The defendant Mary Stewart ("Stewart") is employed by CCSP as a dental assistant at HRYCI, and her responsibilities include scheduling dental sick calls and providing assistance to dentists while they treat patients. (D.I. 250, Ex. E.)

Dr. Richman does not maintain an on-site presence at any of the DOC's prisons and does not routinely direct or supervise day-to-day medical treatment of inmates. (D.I. 246.) He is

dentist." (D.I. 244, Ex. 1.) Nash acknowledged that he has been seen by more than one dentist at HRYCI. (*Id.*)

responsible for overseeing implementation of policies for correctional healthcare services. This includes polices that address access to dental care and services. (*Id.*) Emergency dental care services are available to all offenders. (D.I. 246, Ex. A at 300.) Examples of emergency dental care include:

> post-operative uncontrolled bleeding, facial edema secondary to a dental infection that is of a life- threatening nature or causing facial deformity, fracture of the mandible, maxilla or zygomatic arch, avulsed dentition, an extremely painful condition that is non-responsive to the implementation of dental treatment guidelines, intraoral lacerations that require suturing to include the vermillion border of the lips, fractured dentition with pulp exposure, acute dental abscess, oral pathological condition that may severely compromise the general health of the inmate, acute necrotizing ulcerative gingivitis, purulent drainage or discharge and a fractured tooth at the gum line.

(D.I. 246, Ex. A at 300-301.) The policy for dental restorations and extractions provides that "[e]very effort shall be made by the medical services contract provider dentist to restore a tooth with a restoration, rather than an extraction. The restorability of a tooth shall be determined by the medical services contract provider dentist and documented on a dental treatment plan." (*Id.* at 301). The policy for root canal therapy provides that "[e]ndodontics (root canal therapy) . . . is not routinely available within DDOC but may be considered on a case by case basis. The tooth must be functional, have a good/excellent prognosis and be restorable without a crown. The medical services contract provider dentist shall determine if root canal therapy is an appropriate treatment option for the patient." (*Id.*)

A little over a week after his arrival at HRYCI, on May 12, 2014, Nash underwent an initial physical exam that revealed teeth abnormalities and "poor dentition." (*Id.* at Ex. A at 21, 58.) Nash was housed on Pod 2J. (D.I. 259, ex. A.) On October 23, 2014, Nash submitted a sick call slip requesting dental treatment and complaining he had an abscessed tooth and needed

3

it removed or antibiotics. (D.I. 250, Ex. A at 79.) The sick call slip was received by the medical unit on October 26, 2014. (*Id.*)

Nash's sworn opposition states that on October 24, 2014, he "went to Clark to call medical." (D.I. 259, ¶ 5.) The Fifth Amended Complaint alleges that Clark refused to call the infirmary on October 27, 2014. (D.I. 83, ¶ 3.) The affidavit of Nash's former cellmate, Malik Moss ("Moss") states that he lived with Nash "around" October 24, 2014 through October 26, 2016 and he witnessed Nash "go up to the bubble to ask C.O. Clark if he'll call medical for him. He did not." (*Id.* at Ex. A.) The affidavit does not provide the date when Moss witnessed this exchange. (*Id.*)

According to Clark, he does not recall any interaction with Nash while working at HRYCI in October 2014. (D.I. 245.) The duty roster indicates that Clark worked on Pod 2J on October 12, 17, 19, 24, 26, and 31, 2014. (*Id.*) According to Clark, if an inmate discusses a medical complaint, he advises the inmate to file a sick call slip. (*Id.*) Clark states, "as a correctional officer, [he has] no involvement in the medical care provided to inmates," and he "is not responsible for scheduling an inmate's medical or dental appointments." (*Id.*) Clark states that he would contact medical staff if an inmate presented with an obvious, emergent and serious medical issue. (*Id.*)

The sick call was triaged on October 26, 2014 as routine, but medical records state that by the next morning, October 27, 2014, Nash had developed swelling, and he was taken to the infirmary. (*Id.* at 20, 38, 79.) Nash states that the swelling occurred well before October 27, 2014. (D.I. 259 at 2.) Dr. Michael Matthias ("Dr. Matthias")[3] ordered antibiotics, x-rays,

---

[3] Dr. Matthias is not a defendant.

4

admitted Nash to the infirmary, and advised Nash that, because of an oral infection, it was necessary to extract tooth 8. (D.I. 250, Ex. A at 20.) The next day, Dr. Bishop evaluated Nash, determined the antibiotics were ineffective, and extracted teeth 6 and 8. (*Id*. at Ex. A at 19-20; Ex. C.) Prior to extracting the teeth, Dr. Bishop discussed with Nash the risks of the procedures and treatment alternatives and obtained Nash's consent to perform the procedure. (*Id*. at Ex. A at 20; Ex. C.) Nash remained in the infirmary overnight and received pain medication and antibiotics. (D.I. 250, Ex. A at 19.)

On April 1, 2015, Dr. Bishop performed an initial oral examination of Nash. (D.I. 150, Ex. A at 17-18.) As explained by Jennifer Lenz, D.M.D. ("Dr. Lenz"),[4] the dental policy in effect at the time provided that all inmates receive an initial oral examination within their first year of their incarceration. (*Id*. at Ex. D.) Upon examination, Dr. Bishop found that Nash had "poor oral hygiene" and a "high caries rate" and recommended to Nash that he maintain better oral hygiene. (*Id*. at Ex. A at 17-18; Ex. C.)

Nash was required to submit a sick call slip for him to receive a comprehensive oral exam for the development of a dental treatment plan. (*Id*. at Ex. C.) Nash submitted a routine dental sick call on May 12, 2015, and requested placement on the list for cleanings and fillings. (*Id*. at Ex. A at 16, 92.) According to Dr. Lenz, an inmate must have a comprehensive oral exam before he can be scheduled for restorations and cleanings. (*Id*. at Ex. D.) Dr. Lenz performed a comprehensive oral exam on Nash on May 19, 2015. (*Id*. at Ex. A at 16.) At the time, Nash did not have any complaints, although Dr. Lenz observed significant decay on several of his

---

[4] Dr. Lenz is not a defendant.

teeth and noted that Nash had decay on at least two surfaces of thirteen of his teeth. (*Id.* at Ex. D.) According to Dr. Lenz, Nash's dental condition indicated that he was a poor dentition, but it was not an emergent situation that required immediate attention. (*Id.*) Dr. Lenz made a request for Nash's placement on the list for restorations for the teeth with cavities. (*Id.*) According to Dr. Lenz, once the treatment plan was complete, Nash would be placed on the list for cleaning as requested in his sick call slip. (*Id.* at Ex. A at 16; Ex. D.)

Nash submitted a sick call slip on November 7, 2015, complaining of a toothache and an abscess. (*Id.* at Ex. A at 121.) Medical notes indicate that R.N. Mitsie Robinson ("Robinson")[5] triaged the sick call on November 8, 2015. (*Id.* at 39, 121.) On November 10, 2015, Tarlan Arshian, D.M.D. ("Dr. Arshian")[6] examined Nash complaints, saw no symptoms of an infection, and ordered x-rays. (*Id.* at 14.) The examination revealed that tooth 21 had a large cavity that was non-restorable, and Dr. Arshian placed Nash on the extraction list. (*Id.*) A few days later, on November 14, 2015, Dr. Bishop determined that teeth 21 and 22 also needed extraction because of non-restorable cavities. (*Id.* at Ex. A at 13; Ex. C.) According to Dr. Bishop, in accordance with his routine practice, he discussed the risks and treatment alternatives before Nash consented to the procedure. (*Id.*) Dental records for that date state, "informed consent obtained." (*Id.* at Ex. A at 13.)

On July 3, 2016, Nash submitted a sick call slip complaining that he had not received restorations, and he believed two of his teeth were infected. (*Id.* at Ex. A at 147.) On July 6,

---

[5] Robinson is not a defendant.

[6] Dr. Arshian is not a defendant.

6

2016, R.N. Penniah Ndirangu ("Ndirangu")[7] responded to the sick call. (*Id.* at 40.)  Nash

denied pain when he was seen but stated that he frequently experienced shooting pain. (*Id.* at 7,

40.)  Ndirangu did not see any signs of an infection, and offered Nash pain medication which he

refused. (*Id.* at 7.)  A follow-up visit with dental was scheduled. (*Id.*)

When Dr. Justison examined Nash on July 13, 2016, he observed "widespread decay,"

especially at teeth 15 and 19. (*Id.* at 6.)  Diagnosis was irreversible pulpitis with partial necrotic

pulp #15 and #19, caries, and generalized mild periodontal disease. (*Id.*)  Dr. Justison

prescribed an antibiotic and informed Nash of treatment options that included extractions. (*Id.*)

Nash chose the extraction option. (*Id.*)  According to Nash, at no time did Dr. Justison or any

other dentist at HRYCI discuss any other treatment available other than extraction. (D.I. 211,

Ex. A.)  Nash states that every single dentist and dental assistant told him, "we do not do root

canals." (*Id.*)

On August 12, 2016, White evaluated Nash following Nash's off-site medical

appointment. (*Id.* at 4.)  Nash told White he experienced pain when chewing and was

scheduled with dental but had not yet been evaluated. (*Id.*)  White's notes indicate that Nash

was scheduled for a dental evaluation. (*Id.*)

On August 13, 2016, Nash submitted a sick call slip asking for the next available dentist

visit complaining that he could not eat or sleep, was in pain, and suspected the "infection must

have come back." (*Id.* at 164.)  Nash was triaged on August 15, 2016, in response to his

complaints. (*Id.* at 37, 164).  Records indicate that Nash was seen by medical personnel on

---

[7] Ndirangu is not a defendant.

August 16 and 27 as well as September 5, 9, 15, and 29, but the records do not indicate Nash had

dental complaints or sought dental care. (*Id.* at 3, 4 165.)

On October 4, 2016, the court received Nash's complaint, dated September 28, 2016.

(D.I. 3.) On October 5, 2016, Nash submitted a sick call slip complaining that he had been

scheduled for extractions in July 2016, the extractions had not yet taken place, and he was

"exhausted from being in pain all the time." (*Id.* at 167.) The next day Nash submitted a sick

call slip with complaints of nausea caused by his chronic migraines. (*Id.* at 169.) White

evaluated Nash on October 7, 2016, noting that Nash had "poor dentition" with visible cavities

on his upper and lower molars, but no signs of an oral infection. (*Id.* at 3.) White prescribed

penicillin prophylactically as a bridge to Nash's dental appointment scheduled for October 10,

2016. (*Id.* at Ex. A at 3; Ex. F.) After White ordered the penicillin, he canceled the order

because he was notified that Nash was allergic to the drug. (*Id.* at Ex. F.) Medical notes

indicate Nash has a drug allergy, but Nash states he is not allergic to penicillin. (D.I. 250, Ex. A

at 6, 1033; D.I. 262, ¶ 4.) According to White, since Nash did not have any signs of infection,

White exercised his clinical judgment and did not order an alternative antibiotic. (D.I. 250, Ex.

A at 6, 1033, Ex. F.)

White also ordered Reglan to treat Nash's nausea caused by migraines. (*Id.*) After

White ordered the drug, he was counseled by Dr. Phillips that based upon Nash's clinical

presentation, the nominal benefits of Reglan were outweighed by potential risks as indicated by

medically-based evidence. (*Id.* at Ex. F.) White chose to cancel the Reglan, based upon the

medication administration report that Nash was prescribed another type of pain relief used to

treat migraines. (*Id.*)

On October 10, 2016, Dr. Matthias evaluated Nash when correctional officers brought Nash to the dental department following Nash's complaints of tooth pain and bleeding. (*Id.* at Ex. A at 3.) Dr. Matthias' notes indicate that Nash was scheduled for dental procedures that afternoon and, later in the day, Dr. Justison extracted teeth 14 and 19 due to severe decay and fractured teeth. (*Id.* at 2-3.) The same day, Nash submitted a sick call slip for partial dentures because two more teeth had been pulled. (*Id.* at 171.) Stewart advised Nash he was not eligible for dentures at that time because his treatment plan for restorations was not complete. (*Id.* at Ex. E.)

Nash was seen by medical on February 27, 2017, with complaints of dental related pain. (*Id.* at Ex. A at 898.) The right lateral edge of a tooth was discolored but there were no symptoms of an infection. (*Id.*) Nash was prescribed pain medication, and it was noted that Nash had a scheduled dental appointment. (*Id.*) On March 3, 2017, Dr. Matthias restored teeth 9, 10, and 11. (*Id.* at 897.)

On June 15, 2017, Nash submitted a sick call slip with complaints of tooth pain. (*Id.* at 906.) On June 21, 2017, R.N. John Bollati ("Bollati")[8] evaluated Nash and observed decay of a tooth on the front side with no symptoms of oral infection and scheduled Nash for the dental sick call. (*Id.* at 880.) Dr. Arshian evaluated Nash on June 27, 2017, ordered x-rays, advised Nash that he was already on the list for fillings, explained that dental did "not perform root canals," and determined that Nash had large cavities that might require an extraction. (*Id.* at 879.) The dental note reads, "Pt has no questions or concerns and pt left satisfied." (*Id.*)

---

[8] Bollati is not a defendant.

On October 18, 2017, Nash submitted a grievance complaining that he had not received restorations despite multiple sick call slips. (*Id.* at 1044, 1050) The investigative report of the grievance, dated October 23, 2017, found that Nash had seen dental on numerous occasions, had three fillings, four extractions, and that he continued to be scheduled for additional dental work. (*Id.* at 1044.)

On December 11, 2017, Dr. Matthias saw Nash to determine "what needs to be addressed." (*Id.* at 866.) Dr. Matthias concluded that fillings were appropriate for Nash's smaller cavities on teeth 11, 12, 13, and 20, and that the larger cavity on tooth 28 might require an extraction if the tooth caused toothache. (*Id.* at 866.) Tooth 28 was filled during Nash's December 29, 2017 dental visit. (*Id.* at 865.)

The Fifth Amended Complaint raises claims for medical/dental negligence (Counts I, III, V) against Dr. Bishop, Dr. Justison, and CCSP; negligence per se (Count VI) against Dr. Richman; intentional infliction of emotional distress (Count III) against Dr. Justison; and lack of informed consent (Counts II, IV) against Dr. Justison and Dr. Bishop. (D.I. 83.) The Fifth Amended Complaint also invokes 42 U.S.C. § 1983 and alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at 2, 6.)

Nash moves for summary judgment against White and Dr. Justison on the grounds that there are no genuine issues of material fact that they were deliberately indifferent to his serious medical needs. (D.I. 163, 189.) Nash also moves for summary judgment against the other medical defendants.[9] (D.I. 263.) The State defendants Dr. Richman and Clark move for

---

[9] The medical defendants include CCSP, Dr. Bishop, Dr. Phillips, White, Claudio, Lewis, Crews, and Stewart. Nash's cross-motion for summary judgment is contained in the same filing as his opposition to the medical defendants' motion for summary judgment, and his grounds for

summary judgment on the grounds that: (1) Nash failed to come forth with evidence that his

medical treatment violated his constitutional rights; (2) Nash failed to prove any state law claim

against the State defendants;[10] and (3) they are immune from suit by reason of qualified

immunity.[11] (D.I. 243, 244.) Dr. Justison moves for summary judgment on the grounds that

Nash has failed to provide any evidence to support any of his claims and, therefore, summary

judgment is appropriate as a matter of law. (D.I. 196.) The other medical defendants move for

summary judgment on the grounds that: (1) Nash failed to produce sufficient evidence for a

reasonable jury to conclude that constitutional violations occurred; and (2) the dental negligence

claims against Dr. Bishop and CCSP warrant dismissal because Nash failed to identify a

qualified expert to support the claims as is required under Delaware law. (D.I. 249, 250.)

## III.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." The moving party bears the burden

of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot

be—or, alternatively, is—genuinely disputed must be supported either by "citing to particular

---

summary judgment are difficult to discern as they are co-mingled with his opposition to the
medical defendants' motion for summary judgment.

[10] The Fifth Amended Complaint does not raise state law claims against the State
defendants, and therefore, the court does address this ground for summary judgment.

[11] As will be discussed, the record does not support a finding that the defendants violated
Nash's constitutional rights. Therefore, the court will not address this ground for summary
judgment.

parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252. The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## IV. DISCUSSION

### A. 42 U.S.C. § 1983 Dental/Medical Needs

Nash filed motions for partial summary judgment against White and Dr. Justison and a cross-motion for summary judgment against CCSP, Dr. Bishop, Dr. Phillips, White, Claudio, Lewis, Crews, and Stewart. (D.I. 163, 189, 263.) Nash does not seek summary judgment on the claims he raised against Dr. Richman and Clark, although he opposes their motion. (D.I. 259.) All the defendants move for summary judgment on the dental/medical needs issue. (D.I. 196, 243, 249.)

When bringing a §1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim,

13

an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Delay or denial of medical treatment claim is approached differently than an adequacy of care claim. *United States ex. Rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

14

"Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors. *See, e.g., Durmer v. O'Carrol,* 991 F.2d 64, 68-69 (3d Cir. 1993).

**Clark.** Clark moves for summary judgment on the grounds that he is a correctional officer who is not engaged in, or responsible for, the medical care provided to inmates. Nash opposes and contends that he asked Clark to call medical, but Clark did not. At issue is whether Clark's delays or refusal to call medical as Nash requested on October 24, 2014 was motivated by non-medical factors.[12]

Clark does not recall any interactions with Nash during October 2014 and states that when a medical issue arises he advises the inmate to submit a sick call slip. Nash submitted a sick call slip on October 23, 2014, and did not describe his dental condition as an emergency. Nash states that he asked Clark to call medical on October 24, 2014. However, as Nash discusses, Clark may have simply forgotten to make the call. (D.I. 259 at 6.) Notably, when

---

[12] The Fifth Amended Complaint alleges that Clark's actions took place on October 27, 2014 but, after Clark presented evidence that he did not work that day, Nash stated that the date was actually October 24, 2014, not October 27, 2014. (*Compare* D.I. 83 at ¶ 3 *with* D.I. 259 at ¶ 5.)

medical personnel triaged Nash's dental condition on October 26, 2014, it was considered "routine." If dental personnel considered Nash's condition as routine and not an emergency on October 26, 2014, it is far from reasonable to expect Clark, not a trained medical provider, to identify Nash's dental issues as serious medical needs two days earlier. At most, Clark did not call medical on October 24, 2014, but this alone does not rise to the level of a constitutional violation.

On August 17, 2017, Nash served requests for admissions upon Clark. (D.I. 135.) Nash also argues that, because Clark did not file responses to the requests, this creates a genuine issue of material fact sufficient to defeat his motion for summary judgment. Request No. 35 states, "During the last week of October 2014, . . . Clark told . . . Nash to "lock in," and never called medical." Conversely, Request No. 36 states, "During the last week of October 2014, . . . Clark told . . . Nash to "lock in," and did call medical." Even if the opposing statements are deemed admitted, they do not resolve the issue of whether the failure to call medical was due to non-medical reasons. Indeed, there is no evidence of record that the failure to call medical was motivated by non-medical factors.

In light of the foregoing, no reasonable jury could find for Nash on the claims raised against Clark. Therefore, the court will grant the State defendants' motion for summary judgment as to the claims raised against Clark.

**Claudio, Crews, Lewis, and Stewart.** Claudio, Crews, Lewis, and Stewart move for summary judgment on the grounds that the evidence of record does not support Nash's claims that they were deliberately indifferent to his serious medical/dental needs. Nash filed a cross-motion for summary judgment against the foregoing defendants on the grounds that Claudio,

Crews, and Lewis are all administrators. He further argues that summary judgment is appropriate on his behalf because CCSP did not comply with certain court orders.

There is no evidence of record that Claudio, Crews, or Lewis were personally involved in Nash's care. Therefore, summary judgment is appropriate on their behalf. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Stewart's responsibilities include scheduling dental sick calls and providing assistance to dentists while they treat patients. However, there is no evidence of record that she delayed or denied dental treatment to Nash. Following the extraction of Nash's teeth in October 2016, Stewart advised Nash that he was not a candidate for dentures at that time. Stewart's comments did not violate Nash's constitutional rights.

Accordingly, the court will grant the medical defendants' motion for summary judgment as to the claims against Claudio, Crews, Lewis, and Stewart and will deny Nash's cross-motion for summary judgment against them.

**White and Dr. Phillips**. Nash claims that White and Dr. Phillips violated his constitutional rights when White prescribed Nash penicillin and Reglan, and then discontinued the medications for non-medical reasons. Nash argues that White and Dr. Phillips should have prescribed alternate medications. White and Dr. Phillips contend that Nash was provided appropriate care and there was no denial or delay treatment for non-medical reasons.

White is a physician assistant with a master's degree in medical science. Nash argues that White is neither a dentist nor a doctor capable of making a diagnosis that Nash did not have an infection. Nash contends that he exhibited symptoms of an infection and was in pain for three days when a prescription was cancelled. Medical records indicate that when White saw

17

Nash on October 7, 2016, he found poor dentition, but no pain to percussion of tooth. White prescribed penicillin prophylactically following the oral examination but canceled the prescription the same day when he was notified that Nash was allergic to penicillin. Nash contends that he is not allergic to penicillin. Nonetheless, based upon the allergy notification and, since Nash did not have an infection, White exercised his clinical judgment and did not order an alternate antibiotic. White scheduled a follow-up for Nash that took place on October 10, 2016. When Nash arrived for the appointment early because his teeth were bleeding and hurt, however, there is no evidence of record that White was aware of any change in Nash's condition after he examined him on October 7, 2016.

With regard to the Reglan, after White prescribed the medication, he was counseled by Dr. Phillips to cancel the prescription due to its known, potential adverse reactions. The cancellation did not leave Nash without migraine medication because Nash had been prescribed a "twice daily keep-on-person" pain relief medication used to treat migraines.

The evidence of record does not support a finding that White or Dr. Phillips were deliberately indifferent to Nash's medical or dental needs or that treatment was delayed or denied for non-medical reasons. Instead, the record indicates they exercised their medical judgment in the administration of medication to Nash. No reasonable jury could find in favor or Nash on the claims raised against White and Dr. Phillips. Therefore, the court will deny Nash's motion for partial summary judgment against White, deny Nash's cross-motion for summary judgment against Dr. Phillips, and grant the medical defendants' motion for summary judgment as to the claims against White and Dr. Phillips.

**Dr. Justison**. Nash moves for partial summary judgment against Dr. Justison on the grounds that Dr. Justison was deliberately indifferent to Nash's serious medical needs when he

18

did not perform extractions in a timely manner. Dr. Justison moves for summary judgment on the grounds that the evidence of record does not support Nash's claims and he is entitled to judgment as a matter of law.

Nash argues that Dr. Justison examined him on July 13, 2016, diagnosed a dental condition that required treatment, but did not perform extractions until October 10, 2016. Nash argues this resulted in three months of agonizing tooth pain. He also argues that his dental condition was classified as an "emergency" under DOC policies. Dr. Justison points to the medical records which indicate he treated Nash on two occasions – July 13, 2016 and October 10, 2016.

In moving for summary judgment, Nash omits that fact that he was seen by other medical and dental providers between July 13, 2016 and October 10, 2016, when Dr. Justison provided dental treatment. Indeed, the record reflects that in the interim, Nash was seen on August 12, August 15, 16, 27, September 5, 9, 15, 29, and October 7, and 10, 2016. Nash argues that his dental condition rose to the level of a dental emergency. Nash's diagnoses contain certain words used in the DOC dental policy, but the diagnoses in his records are not identical to those conditions identified in DOC policy as dental emergencies. Further, the dental records do not indicate Nash's condition required immediate dental treatment. Moreover, a dental treatment plan was developed for Nash to remedy his dental condition and this was discussed with Nash. Finally, Nash argues that he was not given any alternatives to treatment other than to have his teeth extracted. As is well-established, mere disagreement to the treatment provided does not rise to the level of a constitutional violation.

Considering Nash's claim against Dr. Justison, and when viewing the evidence of record, no reasonable jury could find Dr. Justison violated Nash's constitutional rights. The record

reflects continual dental and medical treatment by numerous medical providers, not that the dental and medical providers were deliberately indifferent to Nash's condition. Therefore, the court will deny Nash's motion for partial summary judgment against Dr. Justison, and grant Dr. Justison's motion for summary judgment as to the § 1983 claims.

**Dr. Bishop.** Dr. Bishop moves for summary judgment on the grounds that the evidence of record does not support Nash's claims. Nash filed a cross-motion for summary judgment against Dr. Bishop. Nash received dental treatment from Dr. Bishop on October 27, 2014, April 1, 2015, and November 14, 2015. To the extent Nash raises a medical needs claim against Dr. Bishop, his claim is not supported by the evidence of record.

Dr. Bishop is one of several medical and dental personnel who provided dental care to Nash. As discussed above, the record is replete with medical and dental notes evidencing continual dental care and the development of a dental plan for Nash. It appears that Nash's main complaint is that Dr. Bishop did not discuss with him any alternatives to extractions or the risks associated with extractions.[13] Without belaboring the point, it is well-established, mere disagreement to the treatment provided does not rise to the level of a constitutional violation. In light of the record, no reasonable jury could find that Dr. Bishop violated Nash's constitutional rights. Therefore, the court will grant the medical defendants' motion for summary judgment as to the claims against Dr. Bishop and will deny Nash's cross-motion for summary judgment against Dr. Bishop.

**Dr. Richman.** Dr. Richman moves for summary judgment on the grounds that he holds an administrative and supervisory position, is not a medical doctor, and does not provide medical

---

[13] The issue of informed consent is discussed below.

20

care to inmates. Nash opposes the motion on the grounds that Dr. Richman is the "final decision maker or the 'responsible health authority' . . . [who] is responsible for the coordination and provision of healthcare services at all DOC institutions." (D.I. 259 at 8.) He further argues that Dr. Richman failed to employ various policies of the DOC and, in particular, those that concern dental emergencies.

As discussed throughout this opinion, Nash received continuous dental care. The U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69. "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

The evidence before the court does not support a finding that Dr. Richman had a reason to believe that dental or medical personnel were mistreating Nash. The record does not support a finding that Dr. Richman "did not employ" DOC policies for dental emergencies. While Nash may believe he had numerous dental emergencies, it is not supported by his medical/dental record. Finally, it is evident that Dr. Richman was named as a defendant based upon his supervisory position. However, there is no respondeat superior liability under § 1983, *see Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016), and the record does not reflect that Dr.

Richman personally directed, had actual knowledge, or acquiesced to the actions taken by medical and dental personnel.

Based upon the evidence of record, no reasonable jury could conclude that Dr. Richman violated Nash's constitutional rights. Therefore, the court will grant the State defendants' motion for summary judgment as to the § 1983 claims raised against Dr. Richman.

**CCSP.** The medical defendants move for summary judgment on behalf of CCSP on the grounds that Nash has failed to show that it maintained a policy, practice, or custom that caused a constitutional harm. It is not clear from Nash's cross-motion if he seeks summary judgment against CCPS.

Regardless, the court has concluded that the individual medical defendants did not violate Nash's constitutional rights under the Eighth Amendment. CCSP, therefore, cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Nash's rights. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (unpublished) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). Therefore, the court will grant the medical defendants' motion for summary judgment as to the claims against CCSP and, to the extent he seeks summary judgment, will deny Nash's cross-motion for summary judgment against CCSP.

**B.      Dental and Medical Negligence; Lack of Informed Consent
          Counts I, II, III, IV, and V**

Nash alleges that Dr. Justison was medically negligent in failing to appreciate Nash's serious deteriorating dental condition, administrator proper medications, and administer proper

22

treatment in a timely manner all of which resulted in the removal of six additional teeth, impaired speech, bone loss, pain and disfigurement. He also asserts dental negligence against Dr. Bishop and CCSP.[14] Finally, he asserts lack of informed consent claims against Dr. Justison and Dr. Bishop. The medical defendants seek summary judgment on the grounds that Nash did not produce an expert for his claims of dental negligence and informed consent as is required for dental negligence claims.

In Delaware, the failure to obtain informed consent is a form of medical malpractice. *Spencer v. Goodill*, 17 A.3d 552, 554 (Del. 2011). Delaware's informed consent statute is found at 18 Del. C. § 6852. An informed consent claim sounds in negligence and, in general, "to prove negligence one must establish that defendant breached a duty owed to plaintiff and that defendant's act or omission proximately caused plaintiff's injury." *Spencer v. Goodill*, 17 A.3d at 554 (citation omitted). Here, Nash must prove that the failure to obtain informed consent was proximate cause of his injuries. *Id.* In other words, Nash must "prove that a reasonable person would not have undergone the [dental] treatment if properly informed of the risks and alternatives."

Nash argues that informed consent did not take place when Dr. Justison treated him because he was only give the option of a tooth extraction and no other dental treatment alternative. He argues that Dr. Justison failed to adequately explain the nature of oral surgery

---

[14] To the extent Nash raises medical, and not dental, negligence claims he cannot prevail given that Nash did not produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury at the time he commenced this case. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853(a)(1).

and the risk alternatives associated with the surgical extraction of teeth and this caused Nash mental pain, suffering, impaired speech, permanent disfigurement, and horizontal bone loss. Dr. Justison's dental notes for October 10, 2016 read as follows: "Patient wants both teeth out today . . . Informed consent obtained. Risks, benefits, alternative, including no treatment, and possible complications discuss and all of the patient's questions were answered." (D.I. 150, Ex. A at 2.)

Nash also argues that Dr. Bishop did not provide informed consent because following the extraction, his remaining teeth shifted and, in essence, ruined his smile. Dr. Bishop performed extractions on two occasions, October 28, 2014 and November 14, 2015. Dental records for both dates indicate Dr. Bishop obtained informed consent.

Nash's dental records and sick call slips indicate that on numerous occasions he either sought extractions or agreed to have his teeth extracted. (*See* D.I. 259, ex. A at 2, 3, 6, 13, 79, 147, 164.) Nash's dental record indicates that due to the condition of his mouth a reasonable person, having been given all the required information, would have proceeded with the treatment provided him. No reasonable jury could find for Nash on his lack of informed consent claim.

Nash also raises dental malpractice claims. Under Delaware, law, Nash must support his malpractice allegations by expert medical testimony. *See Ashley v. Kronfeld*, 696 A.2d 396 (Del. 1997) (table) (court properly dismissed dental malpractice claim where inmate could not support allegations by expert medical testimony); *Root v. Stout*, 1984 WL 484521 (Del. Super. Jan. 4, 1984) (*Mitchell v. Atkins*, 178 A. 593 (Del. Super. 1935) and *Christian v. Wilmington Gen. Hosp., Ass'n*, 135 A.2d 727 (Del. Super. 1957) require that plaintiff obtain expert testimony for the purposes of supporting allegations of dental negligence). Nash confuses the need for an affidavit of merit in a medical negligence claim with the need for expert testimony. *See* 18 Del.

C. § 6801(5) (dentists excluded form affidavit of merit requirement under Delaware Health Care Negligence Insurance and Litigation Act). Nonetheless, the dental malpractice claims are not supported by expert testimony.

In addition, under Delaware law, to prevail in a negligence action a plaintiff must show, by a preponderance of the evidence, that the defendant's negligent act or omission breached a duty of care owed to the plaintiff such that it proximately caused injury to that plaintiff. *Culver v. Bennett*, 588 A.2d 1094 (Del. 1991). The standard of care required of defendants in tort actions is that of a "reasonably prudent" person. *Robelen Piano Co. v. DiFonzo*, 169 A.2d 240, 244 (Del. 1961). The inquiry in all cases is what a reasonable person would have done under the circumstances-a determination that necessarily will depend on the particular facts of each case. *Id.* at 245.

The custom or practice in a particular industry is probative of what conduct is reasonable under the circumstances. *Sears, Roebuck and Co. v. Midcap*, 893 A.2d 542, 554 (Del. 2006). "When a dentist chooses between appropriate alternative treatments, harm which results from the dentist's good faith choice of one proper alternative over the other is not malpractice." *Rezac v. Zurkow*, 1993 WL 389321, at *2 (Del. Super. Aug. 26, 1993); *See Corbitt v. Tatagari*, 804 A.2d 1057, 1063-64 (Del. 2002). "Malpractice occurs where the conduct of defendant in the treatment of plaintiff does not measure up to the standard of conduct of an ordinarily prudent and careful dentist under similar circumstances." *Id.*

Nash did not refute Dr. Bishop's statement that tooth extractions provided Nash were performed within the standard of care applicable to dentists. Moreover, Nash failed to identify experts to support his dental negligence claims against Drs. Justison and Bishop.

Finally, in an action for malpractice, the Delaware Supreme Court has held that the alleged negligence of an employee, who is a health care provider, must be the focus of any inquiry into the vicarious liability of the employer of that health care provider under the doctrine of respondeat superior. *Reyes v. Kent Gen. Hosp., Inc.*, 487 A.2d 1142, 1144 (Del.1984). If an employee is not liable to the plaintiff for medical negligence, neither is the employer. *Id.* Since neither Dr. Justison nor Dr. Bishop are liable to Nash on the merits, there is no vicarious liability imputed to CCPS.

Based upon the foregoing, the court will grant the medical defendants' motion for summary judgment as to the dental negligence and informed consent claims and will deny Nash's cross-motion for summary judgment as to the same claims.

## C.      Intentional Infliction of Emotional Distress, Count III

Count III raises a claim for intentional infliction of emotional distress against Dr. Justison. A claim for intentional infliction of emotional distress "requires proof that [a defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 367-68 (Del. 2013). "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community." *Id.* (internal quotation marks omitted).

Nash alleges that by reason of Dr. Justison's July 13, 2016 diagnosis (*see* p. 7, *infra*), he intentionally inflicted fear of death and permanent disfigurement upon Nash. No reasonable jury could find for Nash on this issue. Even when viewing the facts in the light most favorable to Nash, the record does not support a finding that Dr. Justison's actions amounted to extreme and outrageous conduct or that it exceeded "all possible bounds of decency." *See e.g., Jordan v. Delaware*, 433 F. Supp. 2d 433, 444 (2006) (under Delaware law, failure of state prison officials

and contract medical staff to treat inmate's hepatitis C or to perform biopsy was not sufficiently extreme and outrageous to support claim for intentional infliction of emotional distress). Accordingly, the court will deny Nash's motion for partial summary judgment against Dr. Justison and will grant Dr. Justison's motion for summary judgment as to this issue.

### D. Negligence Per Se against Dr. Richman, Count VI

Nash alleges that Dr. Richman committed negligence per se by breaching his statutory duty to provide Nash access to dental case as set forth in 11 Del. C. § 6536. Dr. Richman moves for summary judgment on the grounds that Nash cannot prove a violation of § 6536.

Delaware law provides that prisoners receive reasonable medical care. *See* 11 Del. C. § 6536. Section 6536 provides that "[t]he Department [of Correction] shall promulgate reasonable standards, and shall establish reasonable health, medical and dental services, for each institution, including preventative, diagnostic and therapeutic measures on both an out-patient and hospital basis for all types of patients."

Nash's claim fails as a matter of law. As determined by the Delaware Supreme Court, "[t]o the extent Section 6536 imposes any obligations upon which a cause of action could be stated, those obligations are owed by the Department of Correction." *Brooks v. Lynch*, 150 A.3d 274 (Del. 2016) (table). Dr. Richman, as an individual, is not a proper defendant to any statutory claim under Section 6536. Accordingly, the court will grant Dr. Richman's motion for summary judgment as to this claim.

## V. CONCLUSION

For the above reasons, the court will: (1) deny the plaintiff's motions for summary judgment (D.I. 163, 189, 263);and (2) grant the defendants' motions for summary judgment (D.I.

196, 243, 249).

An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

July 19 , 2018
Wilmington, Delaware